IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**UNITED STATES OF AMERICA**,

       Plaintiff,

v.

                                          No. 95-CR-00353-BB

**CARLOS ARMENDARIZ,**

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Rule 29 Motion of Acquittal [Doc. 321]. The Court, having considered the motion, response, reply, and relevant law, and being otherwise fully informed, finds that the motion will be DENIED.

**I. Background**

       Mr. Armendariz was convicted on two counts: (1) conspiracy to possess with intent to distribute five kilograms and more of a mixture and substance containing a detectable amount of cocaine; and (2) possession with intent to distribute five kilograms and more of a mixture and substance containing a detectable amount of cocaine.  Mr. Armendariz was originally indicted in 1995 with four other co-defendants, Edwina Coddington, Richard Orosco, Daniel Golay, and Gerardo Ochoa.  The first three of these co-defendants pled guilty, and Mr. Ochoa was convicted at trial.  At the time that the arrest warrant was issued, however, Mr. Armendariz could not be located. He was finally detained in January, 2008 at the port of entry in Columbus, New Mexico.

       At trial the Government presented evidence that Edwina Coddington, Richard Orosco, Daniel Golay and Gerardo Ochoa were intercepted in the early hours of June 1, 1995, transporting over 500 kilograms of cocaine.  Surveillance conducted before the interception of the narcotics revealed that the house of Edwina Coddington and Richard Orosco served as the staging area for the delivery of the cocaine and the packing of the transport vehicle.  The

Government presented evidence indicating that Mr. Orosco and Ms. Coddington went to Mexico to meet with Mr. Armendariz and an individual named Alberto to determine when various loads of drugs would be transported from Las Cruces to New York and Chicago. As to the load in question, testimony and photographic evidence at trial established that Mr. Armendariz arrived at the Orosco-Coddington residence on May 29, 1995, shortly after the van containing the cocaine arrived at the house. Mr. Armendariz was also present on May 31, 1995 while the cocaine was placed into fiberglass containers[1] and hidden inside a hollowed out camper trailer.

Mr. Orosco, Ms. Coddington, and Mr. Golay were driving the camper when they were intercepted very early in the morning of June 1, 1995, just outside Roswell, New Mexico. Mr. Ochoa was driving a separate vehicle, which testimony indicated was intended to be a scout vehicle. While Mr. Armendariz did not accompany the load, testimony at trial indicated that his role that evening was to determine whether the checkpoint at Alamogordo was open. Upon interception Ms. Coddington confessed to police her role in the transport of the narcotics. Under the direction of police she placed a call to Mr. Armendariz at the number in her address book that was listed to "Carlos." The tape of this phone call was played for the jury, and Ms. Coddington characterized Mr. Armendariz's reaction to the news that the load had been lost as panic. On the tape Mr. Armendariz indicated that he would call Alberto in order to determine what to do about the interception.

Search warrants of the homes of the defendants including Mr. Armendariz revealed a connected web of pagers all registered to the same name, Asaldo Casada. Police also found fiberglass pieces and additional hollowed out camper trailers at Mr. Armendariz's residence in Anthony, Texas.

**II. Legal Analysis**

Defendant bases his motion for acquittal on his contention that the evidence in this case is insufficient to support a guilty verdict on both counts of the indictment. [Memorandum in Support at 2]. When reviewing challenges to the sufficiency of evidence underpinning a

---

[1]Testimony at trial indicated that the fiberglass had a very strong odor and was intended to disguise the odor of the narcotics.

criminal conviction, the Court must view the facts in evidence in the light most favorable to the government. *U.S. v. Dunmire*, 403 F.3d 722, 724 (10th Cir. 2005). The Court will not weigh conflicting evidence, nor consider the credibility of witnesses, nor second guess the fact-finding decisions of the jury. *U.S. v. Patterson*, 472 F.3d 767, 778 (10th Cir. 2006) (internal quotations omitted); *U.S. v. Summers*, 414 F.3d 1287, 1293 (10th Cir. 2005). Rather the motion for acquittal will be granted only if no reasonable jury could find the essential elements of the crime beyond a reasonable doubt, based on the direct and circumstantial evidence together with the reasonable inferences to be drawn therefrom. *See U.S. v. Thompson*, 518 F.3d 832, 849 (10th Cir. 2008); *U.S. v. Hernandez*, 509 F.3d 1290, 1295 (10th Cir. 2007).

The bar to overturning a conviction is high, but not impossible. The Tenth Circuit has noted that "[v]iewing the evidence in its entirety, a conviction must be grounded on more than a suspicion of guilt" and that a conviction may not be properly sustained by merely "piling inference on inference." *Summers*, 414 F.3d at 1294. The jury's inferences must thus flow from logical and probabilistic reasoning, and not be so attenuated from underlying evidence as to cast doubt on the jury's ultimate conclusion. *Summers*, 414 F.3d at 1295 (finding that lack of any testimony placing defendant at or near scene of crime resulted in a gap between the evidence admitted and the jury's ultimate conclusion that was far too wide to uphold defendant's conviction); *cf. U.S. v. Davis*, 437 F.3d 989, 994-95 (10th Cir. 2006) (finding that phone records linking defendant to co-defendant and DNA evidence tying defendant to piece of clothing discarded in the vicinity of the robbery location were sufficient to uphold the conviction).

As noted previously, Mr. Armendariz was convicted on two counts: (1) conspiracy to possess with intent to distribute five kilograms and more of a mixture and substance containing a detectable amount of cocaine; and (2) possession with intent to distribute five kilograms and more of a mixture and substance containing a detectable amount of cocaine.

With respect to the charge of conspiracy, the government was required to prove (1) Mr. Armendariz agreed with one or more persons to possess with intent to distribute five kilograms and more of a mixture and substance containing a detectable amount of cocaine; (2) Mr. Armendariz knew at least the essential objectives of the conspiracy; (3) Mr. Armendariz knowingly and voluntarily became a part of the conspiracy; and (4) interdependence existed

among the alleged coconspirators. *See Hernandez*, 509 F.3d at 1295. The government may establish these elements by direct or circumstantial evidence. *Id.*

Defendant maintains that the Court must overturn his conspiracy conviction because there was insufficient evidence to demonstrate that he agreed with others to violate the law and because there was no evidence at trial that Defendant was part of, or actively participated in, the conspiracy. [Defendant's Memorandum in Support at 4]. Defendant maintains that the evidence at trial only establishes that he was present at the scene of the stash house at the time when the cocaine is believed to have arrived and when it was packaged. *Id.* Had the evidence at trial truly been so paltry, Mr. Armendariz would indeed have an argument for acquittal. *See, e.g., Summers*, 414 F.3d at 1296.

It is true that surveillance recorded the arrival of Defendant's vehicle within three minutes of the load, but the Government's evidence was not limited to placing Mr. Armendariz at the scene of the stash house when the drugs arrived and while the drugs were being loaded into the camper for transport. At trial, Edwina Coddington, a former co-defendant of Mr. Armendariz who served approximately 10 years in prison for her involvement in the conspiracy, testified that she and her common-law husband Richard Orosco had numerous contacts with Mr. Armendariz in relation to drug trafficking. Ms. Coddington testified that she and Mr. Orosco met with Mr. Armendariz and an individual named Alberto in Juarez, Mexico, in relation to planned trips to move drugs to New York and Chicago. She testified that Mr. Armendariz was present watching the packing of the drugs for transport into fiberglass containers. She testified that Defendant's role on the evening of May 31 was to check to determine if the Alamogordo check point was open. The Government then played a tape of a phone call from Ms. Coddington to Mr. Armendariz the morning after the police intercepted the cocaine, from which a jury could have reasonably inferred that Mr. Armendariz was upset and somewhat panicked because the load had been intercepted. Agent testimony at trial established that additional trailers of the same type were discovered at Mr. Armendariz's Anthony Texas residence, and that fiberglass pieces were discovered inside a car belonging to Mr. Armendariz located at Mr. Armendariz's residence. Finally, Mr. Armendariz was linked to his co-defendants by means of pagers: the pager number answered by Mr. Armendariz was registered to the same individual, Asaldo Casada, who had

registered 11 or 12 other pagers, some owned by various convicted members of the conspiracy, including Mr. Orosco and Mr. Ochoa.

From all of this evidence the jury could have reasonably concluded that Mr. Armendariz agreed with Richard Orosco and Edwina Coddington, two of the convicted members of the conspiracy, to possess with intent to distribute more than 500 kilograms of cocaine, and knew the essential objectives of the conspiracy, to transport the cocaine from Las Cruces to either New York or Chicago. From the trailers and fiberglass discovered at his residence and Ms. Coddington's testimony regarding his role, the jury could have reasonably inferred that Mr. Armendariz knowingly and actively participated in the conspiracy to transport the cocaine from Las Cruces along with the convicted co-defendants. The jury could have reasonably reached a conclusion that Mr. Armendariz had a supervisory role over the trafficking both before and during the preparations for the actual transport of the drugs, and thus there was interdependence among him and his co-conspirators. Reaching these conclusions did not require the jury to pile inference on top of inference, but rather to draw conclusions and inferences from the direct testimony of participants and eyewitnesses to the critical elements of the conspiracy.

Defendant, in his motion, appears to invite this Court to question the reliability of Ms. Coddington's testimony in order to overturn the conviction of Mr. Armendariz. *See* Memorandum in Support at 4. However, as noted previously, it is not within the province of this Court to second guess fact finding determinations of the jury, including jury decisions regarding credibility. *See Patterson*, 472 F.3d at 778. As such there was sufficient evidence for the jury to convict Mr. Armendariz on Count 1.

This same evidence equally supports Mr. Armendariz's conviction on Count 2, possession with intent to distribute. "To sustain a conviction of possession with intent to distribute under 21 U.S.C. § 841(a)(1), the government must prove that a defendant: (1) possessed a controlled substance, (2) knew he possessed a controlled substance, and (3) intended to distribute the controlled substance." *U.S. v. Burkley*, 513 F.3d 1183 (10th Cir. 2008) (internal quotations omitted). Possession may be actual or constructive. *U.S. v. Jenkins,* 175 F.3d 1208, 1216 (10th Cir. 1999). "Constructive possession occurs when a person knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are

found. " *Id.* (internal quotations omitted). While constructive possession may be shown using circumstantial evidence, the Government must show a sufficient nexus between Defendant and the drugs. *Id.*

Defendant asserts that the evidence presented at trial was insufficient to establish the knowledge element of the offense.[2] Defendant argues that the Government relied on the odor from the fiberglass resin to show that Mr. Armendariz knew that there was cocaine in the vehicle. Defendant asserts that the Government did not establish Mr. Armendariz's familiarity with the odor of the resin, and the presence of an odor, by itself, is not enough to establish that Mr. Armendariz knew that there was cocaine[3] present. [Memorandum in Support at 4].  In support of this proposition he cites *U.S. v. Hooks*, 780 F.2d 1526, 1531 (10th Cir. 1986), which noted that the mere smell of the PCP in the vehicle which the defendant was driving was not by itself sufficient to establish knowledge, but affirmed the defendant's conviction based on the rest of the circumstantial evidence presented at trial.

Contrary to Defendant's contention, the Government did not attempt to establish the knowledge element of constructive possession using the odor of the resin as evidence.  Rather, as in *Hooks* the jury could infer from the totality of the evidence presented at trial that Mr. Armendariz was the organizer and supervisor of the load and thus had constructive possession of the narcotics, and knew that he had constructive possession of the narcotics.  Given Ms. Coddington's testimony that Defendant was an active participant during the unloading of the cocaine from the van and during the reloading of the cocaine into the fiberglass containers, the jury could easily conclude that Mr. Armendariz had dominion and control over the narcotics.  His response to her phone call regarding the interception of the load further supports that conclusion.

Given the testimony of Ms. Coddington as well as the extensive links between Mr. Armendariz and the convicted co-conspirators, a reasonable jury could come to the conclusion

---

[2]Defendant does not contest the intent to distribute element of the offense, however it is worth noting that the amount, over 500 kilograms, is sufficient to establish intent to distribute. *See U.S. v. Pulido-Jacobo*, 377 F.3d 1124, 1131 (10th Cir. 2004).

[3]Defendant appears to mistakenly call the drug in question PCP rather than cocaine. *See* Memorandum in Support at 4.

that Mr. Armendariz both conspired to possess with intent to distribute and constructively possessed with the intent to distribute the 500 kilograms of cocaine intercepted by law enforcement.  As such his motion for judgment of acquittal must fail.

## ORDER

A Memorandum Opinion having been filed this day, it is hereby ORDERED that Defendant's Rule 29 Motion for Judgment of Acquittal [Doc. 321] be, and hereby is, DENIED.

Dated this 5th day of August, 2008.

                                                                                    BRUCE D. BLACK
                                                                                    UNITED STATES DISTRICT JUDGE